**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-40736
Summary Calendar

_____


ERNESTINE HENSLEE,

Plaintiff-Appellee,

VERSUS

WAL-MART DISCOUNT CITIES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas
(1:95-CV-402)

_____

July 21, 1998


Before JOLLY, JONES, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Ernestine Henslee received a jury verdict for the alleged negligence of Wal-Mart Discount Cities ("Wal-Mart") in failing to prevent her from slipping on a piece of hot dog in a snack bar. The magistrate judge entered judgment on the verdict. Because evidence was insufficient to support the verdict, we REVERSE and RENDER judgment in Wal-Mart's favor.

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Walking into the Wal-Mart snack bar at 12:08 p.m., Henslee suddenly slipped and fell, sustaining injuries to both knees. She testified that she did not see what tripped her before she fell; afterward she looked around and observed a piece of hot dog, approximately two inches long. She testified that the hot dog was smashed or smeared, a fact which she attributed to her having stepped on it. She stated that she had no idea how the hot dog got there or how long it had been there. She added, at the prompting of her attorney, that the hot dog "looked old and cold," but admitted that she did not touch it and that it appeared the same color as those being sold at the snack bar.

Lisa Lozano, a customer who followed Henslee into the snack bar, confirmed her description of events. She also testified that the hot dog "looked old," but failed to supply any reason for her opinion.

Barry Stabler, the Wal-Mart assistant manager on duty, responded to the announcement that Henslee had fallen. He completed an incident report, took pictures, and spoke to Lozano. He testified that Wal-Mart employees were trained to keep their work areas clean; in fact, the store had a policy requiring them to conduct "safety sweeps" or "zone defenses" every ten to fifteen minutes. If employees were too busy to inspect the area, they were instructed to contact management for help. In addition, the store had a porter who roamed throughout the entire store performing "zone defenses" and cleaning up any mess.

Diane Miller, who managed the snack bar, confirmed that she instructs her employees to check the snack bar area every fifteen minutes. She testified that she went on her lunch break at 12:00 that day and had performed a safety sweep before she left, noting that the area was clean. Lisa Valerie, who was not a Wal-Mart employee when she testified but was an employee on duty when the accident occurred, offered "rebuttal" testimony that Miller did not perform such a check before she left. Valerie was allowed to present this testimony despite the fact that Wal-Mart had not been notified of her address or of the expected content of her testimony until the day of trial, that she had been sitting in the courtroom throughout the testimony of Miller and another witness, and that Wal-Mart had presented no formal "case in chief" for Henslee to rebut, save its cross-examination of Henslee's witnesses.

## II.

In reviewing the denial of a motion for judgment as a matter of law (j.m.l."), we determine whether the record contains evidence upon which a reasonable trier of fact could conclude as the jury did. *Molnar v. Ebasco Constr., Inc.*, 986 F.2d 115, 117 (5th Cir. 1993). We reverse the decision denying the motion only if the facts and inferences point so strongly and overwhelmingly in favor of the defendant that reasonable jurors could not arrive at a contrary verdict. *Crosthwait v. John Deere Co.*, 992 F.2d 525, 528 (5th Cir. 1993). A mere scintilla of evidence is insufficient to provide a question for the jury; conflicts about substantial

3

evidence must be present to avoid j.m.l.  *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc).

## III.

To support her claim of premises liability under Texas law, Henslee must demonstrate (1) that Wal-Mart had actual or constructive notice of some condition on the premises; (2) that the condition posed an unreasonable risk of harm; (3) that Wal-Mart did not exercise reasonable care to reduce or eliminate the risk; and (4) that Wal-Mart's failure to use reasonable care proximately caused her injuries.  *Motel 6 G.P. Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996); *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992). Constructive notice may consist of proving that the defendant put the substance on the floor, knew it was there and failed to remove it, or should have discovered and removed it in the exercise of ordinary care because it had remained there for so long.  *Keetch*, 845 S.W.2d at 265; *Richardson v. Wal-Mart Stores, Inc.*, 963 S.W.2d 162, 165 (Tex. App.§§Texarkana 1998, no writ).  Henslee presented no evidence that Wal-Mart placed the hot dog on the floor or knew it was there; accordingly, her evidence must show that the hot dog was on the floor so long that, in the exercise of ordinary care, Wal-Mart would have discovered and removed it.

The jury heard testimony to the numerous ways in which Wal-Mart monitors the cleanliness of its stores.  It has a porter who patrols the entire store.  Its employees are instructed to conduct "safety sweeps" of their assigned areas every fifteen

4

minutes.

Although it appears employees may not have conducted the sweeps when busy, and that at noon on the date in question, fewer employees were working behind the counter than are sometimes available during the typically busy lunch hour, there is no evidence demonstrating when the last check was performed (assuming that her witness, Valerie, correctly observed that Miller did not perform one at noon). Only a few customers were in the snack bar when the accident occurred, so it seems unlikely that, as Henslee implies, the snack bar employees were too busy to perform any sweeps for a substantial period of time before her accident.[2] She produced no witness who could testify that the snack bar employees were lax in their duty to perform safety inspections, on that day or any other. Nor could she produce any witness who had any idea when the hot dog found its way to the floor.

Henslee's only evidence that the hot dog was on the floor long enough to put a reasonable premises owner on constructive notice is her observation, supported by Lozano, that the hot dog "looked old." She could not bolster this opinion with any facts, such as the color of the hot dog or its actual temperature; although she claimed it looked cold, she did not touch it. On appeal, her counsel argues that the fact the hot dog was smeared supported Henslee's claim, yet Henslee admitted that she believed it was she

---

[2] *See Joachimi v. City of Houston*, 712 S.W.2d 861, 865 (Tex. App.§§Houston [1st Dist.] 1986, no writ) (holding insufficient a mere allegation that garage failed to discover oil spill because it was understaffed, without evidence of how long it had been there, where garage claimed daily cleanings and inspections throughout the day).

5

who first smashed the hot dog. There is no evidence to suggest, as Henslee's brief claims, that previous customers had already stepped on the hot dog.

Henslee's "evidence" therefore differs from the testimony offered in cases finding liability. In one case, for example, a plaintiff testified that the grape juice she slipped on had "dried around the edges." *See Furr's, Inc. v. Bolton*, 333 S.W.2d 688, 690 (Tex. Civ. App.SSEl Paso 1960, no writ). Similarly, in another, the plaintiff noted that a vomited substance was "already dried where it looks like a cake." *See Kroger Stores, Inc. v. Hernandez*, 549 S.W.2d 16, 17 (Tex. Civ. App.SSDallas 1977, no writ). These plaintiffs' jury verdicts were upheld because they offered actual observations, rather than baseless conclusions, that the liquid materials were dry in places.

In contrast, Henslee alleged no observable facts to support her conclusion that the hot dog was old. She did not allege that it was a different color from those being sold, nor did she touch it to determine whether it was actually cold.

The unsupported conclusions of the self-interested Henslee and the sympathetic Lozano do not create a material issue of fact. Absent any reliable evidence that the hot dog had been on the floor for longer than a few minutes, or even that Wal-Mart's inspection was so lax that it could have been on the floor for longer than that, a reasonable jury could not find that Henslee had proven constructive notice. As the Texas Supreme Court recently declared, in a similar slip-and-fall case, the plaintiff "had to demonstrate

6

that it was more likely than not that the [food] had been [on the floor] for a long time," "to put the store on constructive notice." *Wal-Mart Stores, Inc. v. Gonzalez*, No. 97-1030, 1998 Tex. LEXIS 79, at *9-*10 (Tex. May 8, 1998). "Absent any evidence of the length of time that the substance had been on the floor, there can be no inference that any increased level of inspecting or cleaning by Wal-Mart would have discovered and remedied the condition." *Richardson*, 963 S.W.2d at 166.

IV.

The magistrate judge faced some difficult procedural issues in deciding whether to allow Valerie's testimony. Because the evidence was insufficient to support the verdict even with Valerie's testimony, we need not review the rulings on those issues.

For the foregoing reasons, the judgment is REVERSED AND RENDERED in favor of Wal-Mart.

7